UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    :

        - v. -                              :

ANTHONY ROSE,                               :
    a/k/a "Todd Chambers,"
JELANI WRAY,                                :
    a/k/a "Lani"
    a/k/a "J.R.,"                           :   **SEALED INDICTMENT**
NATHANIEL COLES,
    a/k/a "Nat,"                            :   19 Cr. ___
TARA ROSE,
    a/k/a "Christine Waters,"               :
    a/k/a "Christine Hinds,"
    a/k/a "Taylor Hinds,"                       **19 CRIM   789**
ANTHONY ROSE, Jr.,
    a/k/a "Sean Wells,"                     :
CHRISTINA GARCIA,
    a/k/a "Cindy,"                          :
LUIS VILELLA,
    a/k/a "Angel Martinez,"                 :
LEON BLUE,
    a/k/a "Boochie,"                        :
CLARENCE FACEY,
    a/k/a "Face,"                           :
ANA RIVERA,
    a/k/a "Melissa Ramos,"                  :
DEJAHNEA BROWN,
    a/k/a "Michelle Williams,"              :
TONYA THOMAS,
    a/k/a "Karen Schwartz,"                 :
ANGELA MELECIO,
    a/k/a "Angie,"                          :
    a/k/a "P2,"
STEPHANIE PASCAL,                           :
    a/k/a "Steph,"
    a/k/a "P5,"                             :
MAKEBA SIMMONS,
EDWARD ABAYEV,                              :
    a/k/a "Eddie,"
GRACIELA BORRERO,                           :

```
        a/k/a "Grace,"                    :
        a/k/a "P8,"
BARRINGTON REID,                          :
        a/k/a "P9,"
TONJA LEWIS,                              :
        a/k/a "J1,"
RAYMOND PARKER,                           :
        a/k/a "Andre"
        a/k/a "J2,"                       :
BERLISA BRYAN,
        a/k/a "Lisa,"                     :
ANGELA MYERS,
        a/k/a "Angie,"                    :
LATIFAH ABDUL-KHALIQ,
SHAKEEMA FOSTER,                          :
KOURTNEI WILLIAMS,
MAKKAH SHABAZZ, a/k/a "Mecca," and        :
YANIRIS DELEON, a/k/a "Jen"
                                          :
        Defendants.
- - - - - - - - - - - - - - - - - - -   X
```

## COUNT ONE
### (Conspiracy to Violate the Travel Act)

The Grand Jury charges:

### Overview

1.      From at least in or about 2014 up to and including November 2019, ANTHONY ROSE, a/k/a "Todd Chambers" ("ROSE"), the defendant, orchestrated a widespread bribery scheme aimed to exploit insurance programs designed to protect motor vehicle accident victims. As part of this scheme (the "No Fault Scheme"), ROSE and his co-conspirators paid hundreds of thousands of dollars to employees or agents of hospitals, medical service providers, police officers and 911 operators employed by the New York Police Department ("NYPD"), and other entities (collectively, the "lead

2

sources") for the protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere.

2.    After obtaining the confidential information of motor vehicle accident victims -- which often included victims' names, contact information, and medical information -- certain co-conspirators contacted the victims and made false representations, including about who the co-conspirators were and on whose behalf they were calling. The co-conspirators made these false representations in order to steer the victims to receive medical treatment and consultation from a select "network" of clinics and lawyers in New York, New Jersey, and elsewhere.

3.    In reality, these clinics and lawyers were handpicked by ROSE and his co-conspirators because the clinics and lawyers were paying kickbacks to ROSE and the co-conspirators in exchange for the referrals. ROSE and the co-conspirators took a portion of the kickbacks for themselves and funneled the rest of the money to the lead sources that provided the confidential information. ROSE and his co-conspirators further sought to use this arrangement to dictate to the clinics the medical care that victims received.

**The Defendants**

4.    At all times relevant to this Indictment:

a.    ANTHONY   ROSE,   a/k/a   "Todd   Chambers,"   the defendant, was the organizer and leader of the No Fault Scheme.

b.    To further the No Fault Scheme, ROSE enlisted the services of four groups of co-conspirators, including, among others: the brokers that cultivated the lead sources and paid bribes (the "Payor Conspirators"); the workers of a multi-person call center (the "Call Center") who contacted the victims and steered them to the lawyers and medical providers participating in the scheme (the "Call Center Conspirators"); the employees and contractors of federally funded hospitals who sold protected patient information to ROSE and his co-conspirators for personal gain (the "Hospital Lead Sources"), and the members of the NYPD who provided confidential information concerning motor vehicle accident victims to ROSE and his co-conspirators for personal profit (the "NYPD Lead Sources").

c.    **The Payor Conspirators**. JELANI WRAY, a/k/a "Lani" or "J.R.," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," LEON BLUE, a/k/a "Boochie," CHRISTINA GARCIA, a/k/a "Cindy," and CLARENCE FACEY, a/k/a "Face," the defendants, were responsible for generating lead sources, obtaining the names and contact information of accident victims from lead sources, and paying money to the lead sources in exchange for such information. In addition to generating and paying lead sources, COLES served as

4

a "manager" of several of the clinics participating in the scheme and paid kickbacks to ROSE in return for victim referrals to the clinics he controlled.

d. **The Call Center Conspirators.** TARA ROSE, a/k/a "Christine Waters," a/k/a "Christine Hinds," a/k/a "Taylor Hinds," ANA RIVERA, a/k/a "Melissa Ramos," DEJAHNEA BROWN, a/k/a "Michelle Williams," TONYA THOMAS, a/k/a "Karen Schwartz," and LUIS VILELLA, a/k/a "Angel Martinez," the defendants, among others, contacted accident victims in furtherance of the scheme from a call center (the "Call Center") located in Queens, New York. These defendants steered motor vehicle accident victims to certain lawyers and medical providers who, in turn, paid kickbacks to ROSE for the referrals.

e. **The Hospital Lead Sources.** ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph" or "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," TONJA LEWIS, a/k/a "J1," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9," and BERLISA BRYAN, a/k/a "Lisa," the defendants, were employees at, or agents of, federally funded hospitals or medical centers located in New York and New Jersey. In furtherance of the scheme, these defendants knowingly accepted bribe payments from ROSE and the Payor Conspirators in exchange for providing confidential patient information, which they obtained while

5

discharging their health care duties and knew was protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

f.    **The NYPD Lead Sources.** ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER, KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS DELEON, a/k/a "Jen," the defendants, are current or former employees of the NYPD. In furtherance of the scheme, these defendants knowingly accepted bribe payments from ROSE and the Payor Conspirators in exchange for providing confidential information relating to motor vehicle accident victims, which information the defendants obtained while discharging their official duties for the NYPD.

## Overview of No Fault Motor Vehicle Insurance

5.    New York and New Jersey are two of twelve states that have enacted "no-fault" liability automobile insurance coverage. These state no-fault insurance laws require a driver's automobile insurance company to automatically pay automobile insurance claims for certain types of motor vehicle accidents, provided the claim is legitimate, and is below a particular injury or damages threshold. This process is intended to resolve automobile claims without apportioning blame or fault for the accident, thereby avoiding the costs associated with an extended investigation of

6

the accident or protracted litigation between various parties and their insurance companies.

6.     Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Law §§ 5101, et seq.) and the regulations promulgated thereto (11 N.Y.C.R.R. §§ 65, et seq.), all automobile insurers operating in the state of New York are required to provide no-fault benefits to insured drivers.  New York no-fault benefits include up to $50,000 per insured for necessary expenses that are incurred for healthcare goods and services, including medical services.

7.     Similarly, under the New Jersey Automobile Reparation Reform Act (N.J. Stat. §§ 39:6A, et seq.) and the regulations promulgated thereto (N.J.A.C. §§ 11:3-7, et seq.), automobile insurers must provide no fault benefits to insureds.  All policies must provide no-fault benefits of a minimum of $15,000 per insured for necessary expenses that are incurred for healthcare goods and services, including medical services.

## Means and Methods of the Conspiracy

8.     Between at least in or about 2014 and in or about November 2019, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, and his co-conspirators bribed as many as 50 lead sources who, at the time they accepted the bribes, were working for federally funded hospitals, the NYPD, and other entities.  ROSE and the Payor

Conspirators paid these lead sources as much as $4,000 per month, and continuously worked to identify new lead sources, largely through word of mouth, and through the extensive corrupt network established and maintained by ROSE. ROSE emphasized to lead sources that they would be paid in cash and "off the books."

9.    After receiving the confidential victim information from the lead sources, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, provided the information to the conspirators working at the Call Center (the Call Center Conspirators). At all times relevant to this Indictment, ROSE staffed the Call Center with 10 to 15 employees. The Call Center Conspirators contacted the accident victims and steered them to seek medical treatment at certain clinics and to seek legal counsel from particular law firms. In doing so, the Call Center Conspirators followed a pre-established "script" and, among other deceptive practices, used false names, stated they were from fictitious companies, and lied about how they acquired the victims' names, telephone numbers, and other information. On many occasions, the Call Center Conspirators falsely told accident victims that they were calling from an organization affiliated with the New York Department of Transportation, that their organization had obtained the victims' contact information through a "Personal Injury Hotline," and that they were put in place to protect accident victims from people who

8

"get [their] information illegally and mislead them into medical [clinics]." The Call Center Conspirators also gave accident victims a phony "reference number" and instructed victims not to speak with anyone else about their insurance claim — including lawyers or insurance companies.

10. In selecting which motor vehicle accident victims to call, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, instructed the Call Center Conspirators to target victims from low-income neighborhoods because, in Rose's view, these individuals could be more easily brought into the scheme. As ROSE explained, "The hood. The hoods is number one. Meaning, they pull those joints up based on neighborhoods. Tell her all that Manhattan shit, those people got attorneys. We need all the hood cases. Bronx hood, they -- it's poor -- those cases -- those insurance policies go by demographics. We want all the bad neighborhoods . . . . The top-tier shit is all the hood. I don't care what neighborhood it is."

11. In exchange for referring accident victims to certain clinics and law firms, the participating medical clinics and law firms paid ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, and the co-conspirators kickbacks. Although the amount of the kickbacks varied among the participating clinics and law firms,

ROSE and co-conspirators earned, on average, approximately $3,000 per successful referral.

12.  From at least in or about 2014 to November 2019, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, and his co-conspirators illegally steered approximately 6,000 motor vehicle accident victims to participating clinics and lawyers, who were paying kickbacks to ROSE and his co-conspirators.

13.  In addition, this figure is a fraction of the number of accident victims they contacted whose confidential information was unlawfully disclosed as part of the No-Fault Scheme.  Indeed, Rose estimated that the Call Center Conspirators successfully induced approximately 1 in 10 accident victims to seek treatment or representation from participating clinics and lawyers. Thus, the No-Fault Scheme resulted in the improper disclosure of the confidential information of as many as 60,000 motor vehicle accident victims.

14.  ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, and the co-conspirators went to elaborate lengths to conceal the No-Fault Scheme. Among other deceptive tactics, the co-conspirators routinely referred to one another by aliases; used "burner" phones with temporary and unidentifiable phone numbers, which they switched every 60 days; set up numerous fictitious companies; corresponded through encrypted mobile applications; and concealed

spreadsheets, which tracked the bribe payments to lead sources, in secret email accounts that co-conspirators could access remotely. The members of the conspiracy also assigned unique code names to each lead source, such as "J1," "P2," and "G6," and used these code names to refer to lead sources during communications rather than using their true names.

## Statutory Allegation

15. From at least in or about 2014, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANTHONY ROSE, a/k/a "Todd Chambers," JELANI WRAY, a/k/a "Lani" or "J.R.," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," CHRISTINA GARCIA, a/k/a "Cindy," LUIS VILELLA, a/k/a "Angel Martinez," LEON BLUE, a/k/a "Boochie," CLARENCE FACEY, a/k/a "Face," TARA ROSE, a/k/a "Christine Waters," "Christine Hinds," or "Taylor Hinds," ANA RIVERA, a/k/a "Melissa Ramos," DEJAHNEA BROWN, a/k/a "Michelle Williams," TONYA THOMAS, a/k/a "Karen Schwartz," ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph" or "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9," TONJA LEWIS, a/k/a "J1," RAYMOND PARKER, a/k/a "Andre" or "J2," BERLISA BRYAN, a/k/a "Lisa," ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER, KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS

11

DELEON, a/k/a "Jen," the defendants, together with others known and unknown, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, a violation of the Travel Act, in violation of Title 18, United States Code, Sections 1952 and 371.

16. It was a part and an object of the conspiracy that ANTHONY ROSE, a/k/a "Todd Chambers," JELANI WRAY, a/k/a "Lani" or "J.R.," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," CHRISTINA GARCIA, a/k/a "Cindy," LUIS VILELLA, a/k/a "Angel Martinez," LEON BLUE, a/k/a "Boochie," CLARENCE FACEY, a/k/a "Face," TARA ROSE, a/k/a "Christine Waters," "Christine Hinds," or "Taylor Hinds," ANA RIVERA, a/k/a "Melissa Ramos," DEJAHNEA BROWN, a/k/a "Michelle Williams," TONYA THOMAS, a/k/a "Karen Schwartz," ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph" or "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9," TONJA LEWIS, a/k/a "J1," RAYMOND PARKER, a/k/a "Andre" or "J2," BERLISA BRYAN, a/k/a "Lisa," ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER, KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS DELEON, a/k/a "Jen," the defendants, and others known and unknown, knowingly did travel in interstate and foreign commerce and did use the mail and a facility

12

in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit, a bribery scheme in violation of New York Penal Law §§ 180.05, 200.00, and 200.10 and New Jersey Revised Statutes § 2C:27-2, among others, whereby employees or agents of hospitals, the NYPD, emergency medical services, and other entities disclosed protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere in exchange for payment, and thereafter performed and attempted to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, and carrying on of such unlawful activity.

## Overt Acts

17. In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about October 17, 2016, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, spoke with an unindicted co-conspirator ("CC-1") and suggested that CC-1 get a burner phone and to use a particular messaging application to avoid detection.

b. On or about September 26, 2016, JELANI WRAY, a/k/a "Lani" or "J.R.," the defendant, had a conversation with ROSE in

13

which WRAY told ROSE, in substance and in part, that he had just received information from multiple lead sources to pass on to other co-conspirators.

c.    On or about December 17, 2018, NATHANIEL COLES, a/k/a "Nat," the defendant, wired approximately $1,250 from a bank account that he controlled to a bank account in BORRERO's name.

d.    On or about December 28, 2016, ANTHONY ROSE, Jr., a/k/a "Sean Wells," the defendant, had a conversation with ROSE in which they discussed recruiting a potential lead source and how much they would be willing to pay this lead source for her information.

e.    On or about January 23, 2017, ROSE called CHRISTINA GARCIA, a/k/a "Cindy," the defendant, and discussed payment arrangements for several lead sources that GARCIA had recruited for ROSE.

f.    On or about October 24, 2016, LEON BLUE, a/k/a "Boochie," the defendant, spoke with ROSE over the phone and discussed, among other things, code names assigned to new lead sources BLUE had recruited into the conspiracy.

g.    On or about February 26, 2017, CLARENCE FACEY, a/k/a "Face," spoke with ROSE over the phone and discussed potential lead sources at two area hospitals.

14

h.   On September 8, 2017, TARA ROSE, a/k/a "Christine Waters", "Christine Hinds," or "Taylor Hinds," the defendant, wrote a check for $700 to a 911 operator employed by the NYPD, ANGELA MYERS, a/k/a "Angie," the defendant.

i.   On or about April 2, 2017, DEJAHNEA BROWN, a/k/a "Michelle Williams," the defendant, called a motor vehicle accident victim and attempted to induce the victim to use the medical treatment services offered by the conspirators in the Call Center.

j.   On or about September 20, 2016, ANA RIVERA, a/k/a "Melissa Ramos," received a call from ROSE during which they discussed accident victim information that had recently been provided to the Call Center.

k.   On or about November 16, 2016, TONYA THOMAS, a/k/a "Karen Schwartz," the defendant, called RAYMOND PARKER, a/k/a "Adrian" or "J2," the defendant, from ROSE's phone, and introduced PARKER to ROSE, so he could participate in the No Fault Scheme.

l.   On or about February 21, 2017, LUIS VILELLA, a/k/a "Angel Martinez," the defendant, spoke with ROSE over the phone and discussed a potential lead source.

m.   On or about October 1, 2016, ANGELA MELECIO, a/k/a "Angie" or "P2," sent ROSE a multimedia message from her cell phone

which contained a handwritten list of five names and telephone numbers.

n.    On or about September 20, 2016, STEPHANIE PASCAL, a/k/a "Steph" or "P5," texted ROSE, "Good morning I have 1 [name redacted] [phone number redacted].   Please let me know when recieved [sic]," to which ROSE responded, "Got it."

o.    On or about December 28, 2016, ROSE called MAKEBA SIMMONS, the defendant, who answered the call from a location in the Southern District of New York, and told her, in substance and in part, that he would pay her "twenty-four grand off the books, cash," to which SIMMONS responded, "Okay, no problem. I understand."

p.    On or about February 23, 2019, EDWARD ABAYEV, a/k/a "Eddie," the defendant, sent ROSE a list of approximately 15 names and numbers.

q.    On or about October 28, 2016, a financial account registered to TONJA LEWIS, a/k/a "J1," the defendant, received a wire transfer from an account registered to LEON BLUE, a/k/a "Boochie," the defendant.

r.    On or about November 18, 2016, ROSE called RAYMOND PARKER, a/k/a "Adrian" or "J2," and discussed whether ROSE would pay PARKER per accident victim or "on salary."

s. On or about September 21, 2016, GRACIELA BORRERO, a/k/a "Grace" or "P8," the defendant, texted NATHANIEL COLES, a/k/a "Nat," the defendant, a list of approximately 8 names and telephone numbers.

t. On or about October 27, 2016, BARRINGTON REID, the defendant, texted NATHANIEL COLES, a/k/a "Nat," the defendant, two lists containing a total of 8 names and telephone numbers.

u. On or about March 25, 2019, ROSE wired BERLISA BRYAN, a/k/a "Lisa," $250 using a mobile payment application.

v. On or about March 11, 2017, ROSE texted ANGELA MYERS, a/k/a "Angie," the defendant, to discuss, among other things, when she would be sending "work."

w. On or about January 14, 2017, ROSE called LATIFAH ABDUL-KHALIQ, the defendant, and told her, in substance and in part, that he was going to see her today for payment.

x. On or about January 14, 2017, ROSE called SHAKEEMA FOSTER, the defendant, and, among other things, informed FOSTER that she could make "30 thousand off the books" providing information to ROSE.

y. On or about December 1, 2014, KOURTNEI WILLIAMS, the defendant, sent ROSE lists of approximately 30 names and numbers.

17

z.    On or about January 29, 2019, ROSE contacted MAKKAH SHABAZZ, a/k/a "Mecca," the defendant, to inquire about the balance ROSE owed her, to which SHABAZZ responded, "300."

aa.    On or about June 6, 2019, ROSE received an encrypted WhatsApp message from YANIRIS DELEON, a/k/a "Jen," containing nearly two dozen names and telephone numbers.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- ANTHONY ROSE, a/k/a "Todd Chambers,")

The Grand Jury further charges:

18.    The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

19.    From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8 use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information

for personal gain and malicious harm, to wit, ROSE made payments to hospital personnel, health care providers, and other medical professionals in exchange for individually identifiable health information of automobile accident victims.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Wrongful Disclosure of Individually Identifiable Healthcare Information – NATHANIEL COLES, a/k/a "Nat,")

The Grand Jury further charges:

20. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

21. From at least in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, NATHANIEL COLES, a/k/a "Nat," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, COLES made payments to hospital personnel in exchange

19

for individually identifiable health information of automobile accident victims, which information COLES transmitted in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- LEON BLUE, a/k/a "Boochie,")

The Grand Jury further charges:

22. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

23. From at least in or about 2016, up to and including 2017, in the Southern District of New York and elsewhere, LEON BLUE, a/k/a "Boochie," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, BLUE made payments to hospital personnel in exchange for individually identifiable health information concerning

automobile accident victims, which information BLUE transmitted to ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- ANGELA MELECIO, a/k/a "Angie," a/k/a "P2,")

The Grand Jury further charges:

24. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

25. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANGELA MELECIO, a/k/a "Angie" or "P2," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, MELECIO provided individually identifiable health information concerning automobile accident victims to ANTHONY ROSE, in exchange for payment.

21

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT SIX
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- STEPHANIE PASCAL, a/k/a "Steph" or "P5")

The Grand Jury further charges:

26. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

27. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, STEPHANIE PASCAL, a/k/a "Steph" or "P5," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, PASCAL provided individually identifiable health information concerning automobile accident victims ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT SEVEN
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- MAKEBA SIMMONS)

The Grand Jury further charges:

28.  The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

29.  From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, MAKEBA SIMMONS, the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, SIMMONS provided individually identifiable health information concerning automobile accident victims to ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT EIGHT
**(Wrongful Disclosure of Individually Identifiable Healthcare Information -- EDWARD ABAYEV, a/k/a "Eddie,")**

The Grand Jury further charges:

30. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

31. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, EDWARD ABAYEV, a/k/a "Eddie," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, ABAYEV provided individually identifiable health information concerning automobile accident victims to ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

24

## COUNT NINE
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- TONJA LEWIS, a/k/a "J1,")

The Grand Jury further charges:

32.    The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

33.    From at least in or about 2016, up to and including 2017, in the Southern District of New York and elsewhere, TONJA LEWIS, a/k/a "J1," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, LEWIS provided individually identifiable health information concerning automobile accident victims to LEON BLUE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT TEN
(Wrongful Disclosure of Individually Identifiable Healthcare Information -- RAYMOND PARKER, a/k/a "Andre" or "J2,")

The Grand Jury further charges:

34.  The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

35.  From at least in or about 2016, up to and including 2018, in the Southern District of New York and elsewhere, RAYMOND PARKER, a/k/a "Andre" or "J2," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, PARKER provided individually identifiable health information concerning automobile accident victims to ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

26

## COUNT ELEVEN
(Wrongful Disclosure of Individually Identifiable Healthcare Information -- GRACIELA BORRERO, a/k/a "Grace" or "P8")

The Grand Jury further charges:

36. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

37. From at least in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, GRACIELA BORRERO, a/k/a "Grace" or "P8," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, BORRERO provided individually identifiable health information concerning automobile accident victims to NATHANIEL COLES, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT TWELVE
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- BARRINGTON REID, a/k/a "P9")

The Grand Jury further charges:

38.    The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

39.    From at least in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, BARRINGTON REID, a/k/a "P9," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person; with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, REID provided personally identifying health care of automobile accident victims to NATHANIEL COLES, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and
1320d-6(b)(3) and Title 18, United States Code, Section 2.)

28

## COUNT THIRTEEN
### (Wrongful Disclosure of Individually Identifiable Healthcare Information -- BERLISA BRYAN, a/k/a "Lisa")

The Grand Jury further charges:

40. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

41. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, BERLISA BRYAN, a/k/a "Lisa," the defendant, did knowingly and in violation of Part C Administrative Simplification, codified at Title 42, United States Code, Section 1320d through 1320d-8, use and cause to be used a unique health identifier, obtain individually identifiable health information relating to an individual, and disclose individually identifiable health information to another person, with the intent to sell, transfer, and use the individually identifiable health information for personal gain and malicious harm, to wit, BRYAN provided individually identifiable health information concerning automobile accident victims to ANTHONY ROSE, in exchange for payment.

(Title 42, United States Code, Sections 1320d-6(a)(1)-(3) and 1320d-6(b)(3) and Title 18, United States Code, Section 2.)

## COUNT FOURTEEN
### (Payments of Bribes and Gratuities To An Agent of A Federally Funded Organization - ANTHONY ROSE, a/k/a "Todd Chambers")

The Grand Jury further charges:

42.    The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

43.    From in or about April 2017, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANTHONY ROSE, a/k/a "Todd Chambers," the defendant, corruptly did give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of an organization, in connection with business, transactions, and series of transactions of such organization involving a thing of value of $5,000 and more, while such organization was in receipt of, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, ROSE paid BERLISA BRYAN, a/k/a "Lisa," to improperly disclose confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during the discharge of BRYAN's professional responsibilities at Hospital-7, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

30

## COUNT FIFTEEN

### (Payments of Bribes and Gratuities To An Agent of A Federally Funded Organization - NATHANIEL COLES, a/k/a "Nat")

The Grand Jury further charges:

44. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

45. From in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, NATHANIEL COLES, a/k/a "Nat," the defendant, corruptly did give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of an organization, in connection with business, transactions, and series of transactions of such organization involving a thing of value of $5,000 and more, while such organization was in receipt of, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, COLES paid GRACIELLA BORRERO, a/k/a "Grace" or "P8," to improperly disclose confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during the discharge of BORRERO's professional responsibilities at Hospital-5, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

31

COUNT SIXTEEN
(Payments of Bribes and Gratuities To An Agent of A Federally
Funded Organization - ANTHONY ROSE, Jr.,
a/k/a "Sean Wells")

The Grand Jury further charges:

46. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

47. From in or about 2016, up to and including 2018, in the Southern District of New York and elsewhere, ANTHONY ROSE, Jr., a/k/a "Sean Wells," the defendant, corruptly did give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of an organization, in connection with business, transactions, and series of transactions of such organization involving a thing of value of $5,000 and more, while such organization was in receipt of, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, ROSE, Jr. paid ANGELA MELECIO, a/k/a "Angie" or "P2," to improperly disclose confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during the discharge of MELECIO's professional responsibilities at Hospital-1, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

32

## COUNT SEVENTEEN
### (Payments of Bribes and Gratuities To An Agent of A Federally Funded Organization – LEON BLUE, a/k/a "Boochie")

The Grand Jury further charges:

48. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

49. From in or about October 2016, up to and including March 2017, in the Southern District of New York and elsewhere, LEON BLUE, a/k/a "Boochie," the defendant, corruptly did give, offer, and agree to give a thing of value to a person, with intent to influence and reward an agent of an organization, in connection with business, transactions, and series of transactions of such organization involving a thing of value of $5,000 and more, while such organization was in receipt of, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, BLUE paid TONJA LEWIS, a/k/a "J1," to improperly disclose confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during the discharge of LEWIS's professional responsibilities at Hospital-7, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

COUNT EIGHTEEN
(Solicitation of Bribes and Gratuities By An Agent of A
Federally Funded Organization – ANGELA MYERS, a/k/a "Angie")

The Grand Jury further charges:

50.   The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

51.   From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANGELA MYERS, a/k/a "Angie," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, MYERS, in her capacity as a 911 Operator, accepted and agreed to accept payments from ROSE, in exchange for providing confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional

34

responsibilities for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT NINETEEN
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – LATIFAH ABDUL-KHALIQ)

The Grand Jury further charges:

52. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

53. From at least in or about 2014, up to and including 2018, in the Southern District of New York and elsewhere, LATIFAH ABDUL-KHALIQ, the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, ABDUL-KHALIQ, in her capacity as a 911 Operator, accepted and agreed to accept payments from ROSE in exchange for providing confidential information concerning motor

35

vehicle accident victims, valued in excess of $5,000, obtained during her professional responsibilities for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization - SHAKEEMA FOSTER)

The Grand Jury further charges:

54. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

55. From at least in or about 2016, up to and including 2017, in the Southern District of New York and elsewhere, SHAKEEMA FOSTER, the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, FOSTER, in her capacity as a 911 Operator, accepted and agreed to accept payments from ROSE in

36

exchange for providing confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional responsibilities for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-ONE
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization - KOURTNEI WILLIAMS)

The Grand Jury further charges:

56. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

57. From at least in or about 2014, up to and including in or about November 2019, in the Southern District of New York and elsewhere, KOURTNEI WILLIAMS, the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, WILLIAMS,

37

in her capacity as a 911 Operator, accepted and agreed to accept payments from ROSE in exchange for providing confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional responsibilities for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-TWO
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – ANGELA MELECIO, a/k/a "Angie" or "P2")

The Grand Jury further charges:

58. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

59. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, ANGELA MELECIO, a/k/a "Angie" or "P2," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-1, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a

business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, MELECIO, in her capacity as an employee of a medical center, accepted and agreed to accept payments from ANTHONY ROSE, Jr., in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional duties at Hospital-1, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

<u>COUNT TWENTY-THREE</u>
**(Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – STEPHANIE PASCAL, a/k/a "Steph" or "P5")**

The Grand Jury further charges:

60. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

61. From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, STEPHANIE PASCAL, a/k/a "Steph" or "P5," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-2, corruptly would and did solicit and demand for the benefit of a person, and

39

accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, PASCAL, in her capacity as an agent of a medical center, accepted and agreed to accept payments from ANTHONY ROSE, Jr., in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional duties at Hospital-2, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-FOUR
**(Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – EDWARD ABAYEV, a/k/a "Eddie")**

The Grand Jury further charges:

62.  The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

63.  From at least in or about 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, EDWARD ABAYEV, a/k/a "Eddie," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other

40

form of Federal assistance, to wit, Hospital-3, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, ABAYEV, in his capacity as an agent of a medical center, accepted and agreed to accept payments from ROSE in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during his professional duties at Hospital-3, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-FIVE
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization - MAKEBA SIMMONS)

The Grand Jury further charges:

64. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

65. From at least in or about 2016, up to and including 2017, in the Southern District of New York and elsewhere, MAKEBA SIMMONS, the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal

41

program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-4, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, SIMMONS, in her capacity as an employee of a medical center, accepted and agreed to accept payments from ROSE in exchange for providing confidential patient information concerning motor vehicle accident victims, in excess of $5,000, obtained during her professional duties at Hospital-4, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-SIX
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – GRACIELLA BORRERO, a/k/a "Grace" or "P8,")

The Grand Jury further charges:

66. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

67. From at least in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, GRACIELLA BORRERO, a/k/a "Grace" or "P8," the defendant, being an agent of

42

an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-5, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, BORRERO, in her capacity as an employee of a medical center, accepted and agreed to accept payments from NATHANIEL COLES in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional duties at Hospital-5, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-SEVEN
(Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – BARRINGTON REID, a/k/a "P9")

The Grand Jury further charges:

68. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

43

69.    From at least in or about 2016, up to and including 2019, in the Southern District of New York and elsewhere, BARRINGTON REID, a/k/a "P9," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-6, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, BARRINGTON, in his capacity as an employee of a medical center, accepted and agreed to accept payments from NATHANIEL COLES in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during his professional duties at Hospital-6, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

44

## COUNT TWENTY-EIGHT
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization - TONJA LEWIS, a/k/a "J1")

The Grand Jury further charges:

70.    The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

71.    From at least in or about 2016, up to and including 2017, in the Southern District of New York and elsewhere, TONJA LEWIS, a/k/a "J1," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-7, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, LEWIS, in her capacity as an employee of a medical center, accepted and agreed to accept payments from LEON BLUE in exchange for providing confidential patient information concerning motor vehicle accident victims, in excess of $5,000, obtained during her professional duties at Hospital-7, which receives in excess of $10,000 in federal funds.

45

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWENTY-NINE
(Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization - RAYMOND PARKER, a/k/a "Andre" or "J2")

The Grand Jury further charges:

72.   The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

73.   From at least in or about 2016, up to and including 2018, in the Southern District of New York and elsewhere, RAYMOND PARKER, a/k/a "Andre" or "J2," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-7, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, PARKER, in his capacity as an employee of a medical center, accepted and agreed to accept payments from ROSE in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during his

46

professional duties at Hospital-7, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT THIRTY
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – BERLISA BRYAN, a/k/a "Lisa")

The Grand Jury further charges:

74. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

75. From at least in or about 2016, up to and including 2018, in the Southern District of New York and elsewhere, BERLISA BRYAN, a/k/a "Lisa," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Hospital-7, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, BRYAN, in her capacity as an employee of a medical center, accepted and agreed to accept payments from ROSE in exchange for providing confidential patient information

47

concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional duties at Hospital-7, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT THIRTY-ONE
### (Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – MAKKAH SHABAZZ, a/k/a "Mecca")

The Grand Jury further charges:

76. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

77. From at least in or about 2018, up to and including May 2019, in the Southern District of New York and elsewhere, MAKKAH SHABAZZ, a/k/a "Mecca" the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organizations, involving something of value of $5,000 and more, to wit, SHABAZZ, in her capacity as a 911 Operator, accepted and agreed to accept

48

payments from ROSE in exchange for providing confidential information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional responsibilities for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT THIRTY-TWO
(Solicitation of Bribes and Gratuities By An Agent of A Federally Funded Organization – YANIRIS DELEON, a/k/a "Jen")

The Grand Jury further charges:

78. The allegations set forth in paragraphs 1 through 14, and 17, of this Indictment are repeated and realleged as if fully set forth herein.

79. From at least in or about November 2018, up to and including in or about November 2019, in the Southern District of New York and elsewhere, YANIRIS DELEON, a/k/a "Jen," the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, the NYPD, corruptly would and did solicit and demand for the benefit of a person, and accept and agree to accept, something of value from a person intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such

organizations, involving something of value of $5,000 and more, to wit, DELEON, in her capacity as an NYPD police officer, accepted and agreed to accept payments from ROSE in exchange for providing confidential patient information concerning motor vehicle accident victims, valued in excess of $5,000, obtained during her professional duties for the NYPD, which receives in excess of $10,000 in federal funds.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## FORFEITURE ALLEGATIONS

80. As a result of committing the offense alleged in Count One of this Indictment, ANTHONY ROSE, a/k/a "Todd Chambers," JELANI WRAY, a/k/a "Lani" or "J.R.," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," CHRISTINA GARCIA, a/k/a "Cindy," LUIS VILELLA, a/k/a "Angel Martinez," LEON BLUE, a/k/a "Boochie," CLARENCE FACEY, a/k/a "Face," TARA ROSE, a/k/a "Christine Waters," "Christine Hinds," or "Taylor Hinds," ANA RIVERA, a/k/a "Melissa Ramos," DEJAHNEA BROWN, a/k/a "Michelle Williams," TONYA THOMAS, a/k/a "Karen Schwartz," ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph" or "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9," TONJA LEWIS, a/k/a "J1," RAYMOND PARKER, a/k/a "Andre" or "J2," BERLISA BRYAN, a/k/a "Lisa," ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER,

KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS DELEON, a/k/a "Jen," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

81.  As a result of committing the offenses alleged in Counts Fourteen through Thirty-Two of this Indictment, ANTHONY ROSE, a/k/a "Todd Chambers," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," LEON BLUE, a/k/a "Boochie," ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph" or "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9," TONJA LEWIS, a/k/a "J1," RAYMOND PARKER, a/k/a "Andre" or "J2," BERLISA BRYAN, a/k/a "Lisa," ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER, KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS DELEON, a/k/a "Jen," the defendants, shall

51

52

forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

## Substitute Assets Provision

82.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ANTHONY ROSE, a/k/a "Todd Chambers," JELANI WRAY, a/k/a "Lani" or "J.R.," NATHANIEL COLES, a/k/a "Nat," ANTHONY ROSE, Jr., a/k/a "Sean Wells," LEON BLUE, a/k/a "Boochie," CLARENCE FACEY, a/k/a "Face," CHRISTINA GARCIA, a/k/a "Cindy," TARA ROSE, a/k/a "Christine Waters," "Christine Hinds," or "Taylor Hinds," ANA RIVERA, a/k/a "Melissa Ramos,"  DEJAHNEA BROWN, a/k/a "Michelle Williams," TONYA THOMAS, a/k/a "Karen Schwartz," LUIS VILELLA, a/k/a "Angel Martinez," ANGELA MELECIO, a/k/a "Angie" or "P2," STEPHANIE PASCAL, a/k/a "Steph," a/k/a "P5," MAKEBA SIMMONS, EDWARD ABAYEV, a/k/a "Eddie," GRACIELA BORRERO, a/k/a "Grace" or "P8," BARRINGTON REID, a/k/a "P9,"TONJA LEWIS, a/k/a "J1," RAYMOND PARKER, a/k/a "Andre" or "J2," BERLISA BRYAN, a/k/a "Lisa," ANGELA MYERS, a/k/a "Angie," LATIFAH ABDUL-KHALIQ, SHAKEEMA FOSTER, KOURTNEI WILLIAMS, MAKKAH SHABAZZ, a/k/a "Mecca," and YANIRIS DELEON, a/k/a "Jen,"

Defendants.

## SEALED INDICTMENT

19 Cr.

(18 U.S.C. § 371; 42 U.S.C. § 1320d; 18 U.S.C. § 666)

GEOFFREY S. BERMAN
United States Attorney

_____
FOREPERSON

*Filed Indictment under seal*
*Arrest warrants issued*

*USMJ Gorenstein*

*11/6/19*

*MG*